IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| vs. | ) ) | No. 3:12-CV-519 |
| REX VENTURE GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL BURKS, | ) ) ) ) |  |
| Defendants, | ) ) ) |  |

## FINAL LIQUIDATION PLAN

Kenneth D. Bell, Esq., the Court-appointed Temporary Receiver (the "Receiver") for and over the estate of Rex Venture Group, LLC d/b/a ZeekRewards.com, any of its subsidiaries, whether incorporated or unincorporated, and any businesses or business names under which it does business (the "Receivership Defendant"), submits this Final Liquidation Plan (the "Plan") in accordance with Paragraph 54 of this Court's Order Appointing Temporary Receiver dated August 17, 2012. This Plan is based on the work of the Receiver and his counsel, agents, consultants, and advisors (the "Receiver Team") and their findings to date (the "Investigation"). The facts presented in this Plan may be supplemented, amended and/or corrected as the Investigation continues.

### I. INTRODUCTION

The Receivership Defendant is a group of interrelated entities and websites, all of which were either controlled or owned directly or indirectly by Defendants Rex Venture Group, LLC

("RVG") and Paul Burks ("Burks" and with the Receivership Defendant, the "Defendants"). RVG and Burks operated a penny auction website, www.zeekler.com ("Zeekler"), and a self-described "private, invitation-only, affiliate advertising division" for Zeekler at www.zeekrewards.com ("ZeekRewards" or the "ZeekRewards Program"). The ZeekRewards Program had its physical operations in Lexington, North Carolina and had internet-based affiliates and contacts throughout the United States and internationally. The Zeekler participants were required to pay a non-refundable fee to purchase and place each incremental bid (typically one cent) on merchandise sold via auction. Bidders could acquire those bids by purchasing them directly on Zeekler.com, but ZeekRewards and its affiliates purchased the vast majority of the bids that they sold or gave away for free.

On August 17, 2012, the Securities and Exchange Commission ("SEC") commenced a civil enforcement action (the "Enforcement Action") against Burks and the Receivership Defendant. *See* (Doc. No. 2, Complaint filed Aug. 17, 2012) (the "SEC Complaint"). The SEC Complaint alleges that the Defendants engaged in (1) the unregistered offer and sale of securities in violation of Sections 5(a) and 5(c) of the Securities Act; (2) fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act; and (3) fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. According to the SEC Complaint, Burks and RVG engaged in the fraudulent unregistered offer and sale of securities with unregistered investment contracts constituting securities in a combined Ponzi and pyramid scheme (the "Scheme") involving hundreds of millions of dollars of money supplied by domestic and foreign investors. *Id* at ¶¶ 1 and 3. The SEC sought equitable relief, including injunctions against future violations of the securities laws, disgorgement, prejudgment interest, and civil monetary penalties.

Simultaneous with the filing of the SEC Complaint, the SEC, the Receivership Defendant and Burks agreed to an order granting emergency relief, including a preliminary injunction, in the form of an order freezing the assets of the Receivership Defendant and appointing a Temporary Receiver over the estate of the Receivership Defendant. *See* (Doc. No. 4, Agreed Order Appointing Temporary Receiver And Freezing Assets of Defendant Rex Venture Group, LLC, filed Aug. 17, 2012), ("Initial Receiver Order").[1] An Amended Order Appointing Temporary Receiver was entered on August 30, 2012, expanding the definition of the Receivership Estate. *See* (Doc. No. 21, Order Granting in part and Denying in part Motion to Amend/Correct Order) ("Amended Receiver Order") (collectively with the Initial Receiver Order the "Receiver Orders").

There are approximately 2.2 million unique users ("Affiliates" or "usernames") in ZeekRewards. The number of Affiliates does not reflect the number of unique individuals who participated in ZeekRewards, as it is likely that some individuals had more than one username. Approximately 1 million Affiliates paid money into the ZeekRewards Program ("Affiliate-Investors").

## II. FINAL LIQUIDATION PLAN

Pursuant to Paragraph 54 of the Initial Receiver Order, the Receiver presents the following Liquidation Plan. Initial Receiver Order ¶ 54.

### A. Known Receivership Real Property

#### 1. Appraisal

The Receiver has retained appraisers and auctioneers to value the real and personal property of the Receivership Estate in order to assist with the liquidation of those assets. The Receivership Defendant owns two buildings in Davidson County, North Carolina: the main

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed them in the Initial Receiver Order.

office building from which the scheme was operated (to which a functioning, leased laundromat is attached), located at 801 and 803 West Center Street, Lexington, NC, and a warehouse located at 4095 Old Salisbury Rd, Lexington, NC.

### 2. Sale/Auction

The Receiver continues to work with the retained appraisers and auctioneers to determine a liquidation method that will provide the greatest return for the Receivership Estate. Options include outright sale, auction, and online auction.

## B. Known Receivership Personal Property

### 1. Appraisal

The Receivership Defendant maintained personal property at its leased and owned facilities. Based upon its investigation to date, the Receiver has determined that this property belongs to the Receivership Estate. The Receiver anticipates that certain third parties will claim ownership interests in some portion of the personal property. Based upon evidence collected to date, the Receiver anticipates disputing many such claims by third parties. The personal property includes office equipment, furniture, electronics, ZeekRewards or Zeekler branded merchandise, and music memorabilia. The Receiver is currently working with the auctioneers and appraisers to determine the potential value of the personal property.

### 2. Sale/Auction

The Receiver continues to work with the retained appraisers and auctioneers to determine a liquidation method that will provide the greatest return to the Receivership Estate. Options currently being considered include auction and online auction.

## C. Receivership Liquid Assets

As of January 31, 2013, available Receivership Assets totaled $312.1 million. As outlined in the Receiver's Status Report for the Fourth Quarter 2012, the Receiver is also investigating

additional potential Receivership Assets including approximately $4.0 million to $7.0 million in funds held by e-wallets, and funds held in foreign accounts, including one account that holds or held approximately $12 million.

### D. Potential Litigation Claims

The Receiver Team has been evaluating options and strategies for pursuing funds fraudulently transferred by the Receivership Defendant. However, the likelihood of success in reducing the thousands of potential claims to judgment and collecting such judgments is too early to estimate. In addition, the Receiver is investigating potential claims against certain professionals, contractors, financial institutions, and vendors that may be liable to the Receivership Defendant.

#### 1. Identifying and Pursuing Fraudulently Transferred Funds Held by Net-Winner Affiliate-Investors

Approximately 80,000 net-winner Affiliate-Investor "usernames" participated in ZeekRewards. Often, individual Affiliate-Investors used multiple usernames, and the Receiver is still determining through forensic investigation the actual number of individuals who withdrew more than they invested in ZeekRewards. To date, the Receiver estimates approximately $295.5 million of Receivership Assets may have been fraudulently transferred to net-winners and potentially subject to fraudulent transfer claims ("clawback" claims).

The Receiver's upcoming clawback litigation efforts will require significant forensic resources to calculate each Affiliate-Investor's investment and the funds transferred to them. FTI is analyzing millions of transactions in order to trace the transfer of funds into or out of the accounts of the Receivership Defendant. In light of attendant issues with the RVG databases, FTI has had to perform extensive testing of the RVG data to validate the proposed calculations and to rely on third-party sources for understanding the organization and function of the database

components and the transfers of funds. While this analysis is time-consuming, it is necessary in order to identify and evaluate potential claims against net-winner Affiliate-Investors.

The Receiver's litigation team is still evaluating the most efficient and cost-effective method for pursuing fraudulent transfer claims. Ultimately, the Receiver's clawback litigation is likely to be a combination of individual actions, group actions, defendant class actions, and other alternative dispute resolutions as approved by the Court. Such proceedings will establish the key findings applicable to most, if not all, recipients of fraudulently transferred funds (findings such as the existence of a Ponzi and/or pyramid scheme). They will also separately provide a forum for the efficient determination of the proper amount of each net-winner's repayment obligation.

The group of net-winners identified to date includes numerous individuals residing outside of the United States, with the largest foreign winners living mainly in countries with established legal systems which are signatories to the Hague Convention for international service of process. While the pursuit of clawback claims against these foreign net winners raises various other challenges, the Receiver intends to include these winners as parties to domestic litigation based on their contacts with the ZeekRewards Program in the United States so long as doing so will not delay the litigation against domestic winners. The Receiver will also pursue cost-effective foreign litigation to establish the repayment obligation and/or to collect judgments where necessary and appropriate.

Further, the Receiver has been in discussions with multiple net-winners regarding possible settlement of the Receiver's claims against them. The Receiver will seek the Court's approval for proposed settlements if those negotiations are successfully concluded.

### 2. Investigating Claims against Receivership Defendant Insiders

The Receiver is also considering potential claims against Receivership Defendant insiders including employees, contractors, or other RVG agents who played an active role in furthering the Scheme.[2] The forensic resources needed for these claims will be similar to those needed for fraudulent transfer claims. Potential claims against insiders include fraudulent transfer, breach of fiduciary duty, fraud, conversion, negligence, and other common law claims. The approximate value of these claims is unknown at this time. The anticipated methods of enforcing these claims are through an action or actions against these insiders, either collectively or as individuals.

### 3. Investigating Claims against the Receivership Defendant's Third-Party Advisors and Others

The Receiver is also considering potential claims against third-party advisors of the Receivership Defendant, and vendors or other service providers that knew or should have known of the inappropriate nature of RVG's activities and yet facilitated those activities for their own gain. The forensic accounting resources needed to prosecute these claims will be similar to those needed for fraudulent transfer claims. Potential claims include breach of fiduciary duty, negligence, professional negligence, and breach of contract, among other common law claims. The approximate value of these claims is unknown at this time.

### 4. Privilege Issues and Taint Team

Certain third parties have asserted various claims of attorney-client privilege and work product protection for communications and electronic documents in the Receiver's possession. The Receiver Team has expended considerable resources to establish an internal "taint team" of McGuireWoods attorneys to fulfill its Court-ordered and ethical obligations to assess and evaluate third parties' assertion of privilege, notwithstanding the Receiver's waiver of RVG's attorney-client privilege and work product protection for RVG's pre-receivership

---

[2] Some insiders were also Affiliates, and so the Receivership Estate may consider claims against them as net-winners as well.

records. In an effort to conserve costs by avoiding duplicative document review where possible, the Receiver Team hopes to be able to delay a significant portion of its document review until after the privilege disputes have been resolved. The delay caused by the privilege disputes may cause delays in the litigation of the Receivership Estate's claims.

### E. Claims Proceedings

Since the outset of this case, the Receiver has understood that creating an efficient and accurate claims process, while keeping the administrative costs as low as possible, is imperative to providing the creditors of the Receivership Defendant with the greatest possible recovery on their claims. Specifically, with more than two million unique usernames registered on ZeekRewards.com and approximately one million usernames investing funds in the Receivership Defendant,[3] the claims process represents an immense undertaking that may comprise the largest single expense for the Receivership Estate. Because of the gravity of this expense and the need for the process to be done properly in the first instance, the Receiver has enlisted numerous members of the Receiver Team to formulate this process, including lawyers at MW and advisors at FTI and The Garden City Group ("GCG"), the claims agent recently retained by the Receiver.

#### 1. Timeline and Steps for the Claims Process

The Receiver anticipates filing a motion seeking approval of the claims submission process (the "Claims Motion") by the conclusion of the first quarter of 2013. The Claims Motion will seek (i) approval of the claims submission process (the "Claims Submission Process"), (ii) approval of the noticing procedures to be used in providing notice of the date by which claims must be filed against the Receivership Defendant (the "Bar Date") and the Claims Submission Process (the "Noticing Procedures"), and (iii) to establish the Bar Date.

---

[3] At this time, the Receiver Team has identified over 800,000 usernames who may have lost money in ZeekRewards.

### a. Online Claims Submission Process and Electronic Noticing Procedures

Due to the nature of the Receivership Defendant's internet businesses, the internet base of the overwhelming majority of the anticipated claimants in this case, and the volume of the claims to be filed, the Receiver anticipates seeking approval of electronic Noticing Procedures and an online Claims Submission Process. The Receiver Team anticipates requesting the use of electronic noticing via email addresses provided to the Receivership Defendant (and obtained by the Receiver Team from the systems maintained by the Receivership Defendant). The online Claims Submission Process would use a unique website created by GCG. Screenshots of the preliminary mock-up of the online Claims Submission Process are attached hereto as <u>Exhibit 1</u>. The Receiver anticipates providing electronic and publication notice of the Bar Date and the Claims Submission Process as soon as practicable after the entry of the order approving the Claims Motion. The Receiver believes that the online Claims Submission Process would commence within 14 days of the entry of the order approving the Claims Motion.

### b. Bar Date for Claims

The Receiver will ask the Court to set the Bar Date for the first business day that is 120 days after the issuance of the order approving the Claims Motion. This time frame should provide claimants with sufficient time to receive notice, learn of the Claims Submission Process and the Bar Date, and submit the data that will be requested as part of this process. Due to the large number of claims to be submitted, the amount of data to be collected, and the numerous foreign claimants that may submit claims, the Receiver does not believe a shorter period would be sufficient to complete the Claims Submission Process. The Motion will also seek approval

from the Court that any claim filed after the Bar Date be disallowed as untimely and that such claimant not be entitled to any distribution from the Receivership Estate. The Receiver will also ask this Court to disallow any claim filed with GCG prior to the beginning of the formal, Court-approved Claims Submission Process or after the Bar Date.

### c. Claims Determination Process

Once filed, the Receiver Team will review filed claims and compare the filed claims to the records of the Receivership Defendant to determine whether the Receiver Team agrees with or disputes the asserted claim amount. Though the claims determination procedures are not fully formed at this time, and will be subject to Court approval pursuant to a future motion, the Receiver Team believes that it will seek approval of the following framework for notifying claimants of the Receiver Team's determination regarding claims:

1. Once the Receiver Team makes a determination regarding the amount of a properly submitted claim, the Receiver Team shall notify the claimant of this determination.[4]

2. If the Receiver Team does not dispute the amount of a properly submitted claim, the Receiver will confirm that he does not dispute such claim.

3. If the Receiver Team disputes the amount of a claim, the Claims Motion will seek to treat claimants in the following manner:

    a) The Receiver Team will notify the claimant of the claim amount that it has determined should be allowed, and the claimant shall have 30 days to object in writing to any such claim determination.

---

[4] A claim determination is the determination made by the Receiver Team of whether a claim asserted against the Receivership Defendant should be allowed and in what amount. This determination will be made using RVG's records, the materials submitted by a claimant and other information available to the Receiver Team, including, but not limited to, records obtained from third parties. A determination of the amount of a claim –even in the instance where the Receiver Team does not dispute the amount claimed by a claimant—does not mean that the claimant will receive a distribution equal to 100% of the allowed amount of their claim. The distribution percentage (i.e., the percentage a claimant can expect to recover on account of their allowed claim) will be established in the future and will be the total amount of assets available for distribution by the Receivership Defendant divided by the aggregate total of the allowed claims asserted against the Receivership Defendant.

10

> i. The failure of a claimant to timely object to the claim determination will cause the claim to be allowed in the amount asserted by the Receiver Team in the determination.
>
> ii. If the claimant timely objects to the claim determination, the Receiver Team shall engage with the claimant in good faith to resolve the claimant's objection. Should the Receiver Team be unable to resolve the claimant's objection, the Receiver Team will pursue a Court-approved process for resolution.

Though the Receiver Team will evaluate and reconcile filed claims during the Claims Submission Process and issue determinations to claimants as soon as practicable, the anticipated volume of claims to be filed and the amount of data and supporting documentation to be reconciled makes estimating the amount of time necessary to reconcile these claims extremely difficult. The Receiver Team will propose a date to complete the reconciliation of all claims asserted against the Receivership Defendant in a future motion for approval by the Court.

Upon determination of a sufficient amount of claims, subject to the Receiver Team determining that interim distributions are not cost prohibitive, and subject to the establishment of a claims reserve for claims asserted but not yet allowed, the Receiver will seek authorization to make interim distributions to claimants whose claims have been allowed, subject to appropriate releases of claims against the Receivership Estate as approved by the Court. The feasibility of doing such a distribution is not known at this time. Upon all claims being reconciled, the Receiver will seek to make a final distribution on account of all allowed claims. The Receiver will use best efforts to accomplish final distribution by the end of 2014.

## 2. Basis for the Online Claims Submission Process and Electronic Noticing Procedures

The Receiver Team's first task in formulating a Claims Submission Process was obtaining a better understanding of how the Receivership Defendant operated its business. Specifically, the Receiver Team needed to understand how and for what purpose the

Receivership Defendant obtained funds from Affiliates and other sources, and, conversely, how and for what purposes funds were paid out to Affiliates and other entities by the Receivership Defendant.

Early on in this investigation, it became clear that all of the revenues of the Receivership Defendant were derived from online activity, and the actual business operation of the Receivership Defendant (*i.e.*, the penny auction site) was a relatively insignificant source of the Receivership Defendant's revenue. Instead, the vast majority of the Receivership Defendant's revenue was derived from the sale of sample bids to Affiliates and their "downlines"[5] in the multi-level marketing program operated through the ZeekRewards.com website. These sample bids were to be distributed by the Affiliates to new customers for use on the Receivership Defendant's online auction site. Other sources of revenue included, but were not limited to, monthly subscription fees paid to be an Affiliate of the multi-level marketing program, the sale of retail bids for use on the Receivership Defendant's online auction site, the sale of training materials for the multi-level marketing program, and the sale of items through the Zeekler.com online auction site.

The Receivership Team further determined that the largest revenue outflows from the Receivership Defendant were paid to the most senior Affiliates in the multi-level marketing program through their participation in that program. Additionally, payments were made by the Receivership Defendant to its employees and trade creditors, as well as to the entities from which it purchased items that it sold on the Receivership Defendant's penny auction site.

The ongoing forensic investigation of the transfers of funds into and out of the Receivership Defendant is confirming that the Claims Submission Process will have few

---

[5] "Downline" is a multi-level marketing term that describes later-joining Affiliates recruited by other another Affiliate above them in the multi-level marketing program.

12

claimants that were not Affiliates of the Receivership Defendant and almost all of the claimants had solely electronic communications and interactions with the Receivership Defendant. The claims of those parties that did not solely interact with the Receivership Defendant through electronic means—generally trade creditors and employees—are typically small and were largely paid current.

Based on this information, the Receivership Team sought to devise a Claims Submission Process that would provide the greatest access to all claimants and provide the most cost effective means to provide both notice and opportunity to recover on account of their claims. Because the vast majority of the Receivership Defendant's claims pool is comprised of the claims of the various Affiliates or subrogees of these Affiliates[6], who have largely interacted with the Receivership Defendant electronically, the Receiver Team has determined that an online claims process with electronic noticing—with the ability to provide paper submissions for certain claimants—will be the most cost effective and efficient manner to undertake the Claims Submission Process.

### 3. Consideration of Retail Profit Pool Points in the Affiliate Claims Process

Affiliate-Investor's claims will generally derive from certain payments they made to the Receivership Defendant. As discussed above, the largest investments made into the ZeekRewards Program were the purchases of sample or VIP bids, monthly subscriptions, and the purchase of retail bids. As part of this multi-level marketing program, many Affiliates also participated in the "Retail Profit Pool" which was advertised as a daily profit-share program. Affiliates accrued "VIP Points" in the Retail Profit Pool by purchasing sample or VIP bids for

---

[6] For example, financial institutions who gave refunds to Affiliates for allegedly lost cashier's checks, but then honored such cashier's checks when they were presented by the Receiver.

13

$1.00 and then giving them away to retail customers or Affiliates.[7] Each "VIP Point" allegedly entitled the Affiliate to a percentage payout of the alleged daily revenue of RVG. The alleged daily return averaged approximately 1.5%. Affiliates could choose to take their Retail Profit Pool "award" as a cash payment, use it to purchase more VIP bids to give away and increase their VIP Points balance, or a combination of both. Many Affiliates chose to compound their "awards" by purchasing more VIP bids to increase their VIP Points balance. Therefore, at the time of shut down, many Affiliates allegedly had large VIP Points balances.

In sum, Affiliates generated and accumulated VIP Points by perpetuating the multi-level marketing program that was created by the Receivership Defendant. The vast majority of the funds used to pay for an Affiliate's cash "award," which was based on the Affiliate's VIP Points balance, were funds invested in the Receivership Defendant by other Affiliates. In other words, there was little, if any, legitimate business revenue of the Receivership Defendant that was used to pay any amount due or alleged to be due to a creditor or an Affiliate of the Receivership Defendant. Instead of funding distributions from the multi-level marketing program with funds generated through actual business operations, the multi-level marketing program merely redistributed payments made by one Affiliate to another. The Retail Profit Pool was the mechanism used by the Receivership Defendant to redistribute cash among the Affiliates. The exact nature of the redistribution of these amounts is still under review by the Receiver Team.

In examining these facts, the Receiver has determined that because the VIP Points aspect of the multi-level marketing program did nothing more than redistribute funds among Affiliates, points generated and/or accumulated by Affiliates will not be an includable part of an Affiliate's claim for purposes of receiving a distribution from the Receivership Estate. Including any of

---

[7] To be a "qualified" Affiliate and join the Retail Profit Pool, Affiliates also were supposed to have a paid subscription and place an internet add for Zeekler.com or ZeekRewards.com on the internet every 24 hours.

these points as part of any claim of an Affiliate would merely effectuate a continued redistribution of funds from one Affiliate to another Affiliate based upon the multi-level marketing program instituted by the Receivership Defendant.  In other words, it would merely perpetuate the multi-level marketing program that gave rise to the SEC Enforcement Action in this case.  Instead, the Receiver has determined that an Affiliate's claim should be based upon the amount of cash that the Affiliate paid to the Receivership Defendant.

The Receiver Team is still in the process of determining how each of the payments made by an Affiliate to the Receivership Defendant will be treated in the overall claim allowance process.  However, the information obtained in the Investigation to-date has permitted the Receiver Team to create the preliminary draft of the online Claims Submission Process attached hereto as <u>Exhibit 1</u>.

### III. CONCLUSION

As the Receiver continues to finalize his plan for liquidating the assets of the Receivership Defendant, the Receiver will file the appropriate motions with the Court seeking approval.

Dated:  January 31, 2013

By:    /s/ Kenneth D. Bell
       Kenneth D. Bell, Esq., Receiver

and

MCGUIREWOODS LLP
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
Telephone: 704-343-2000
Facsimile: 704-343-2300
*Attorneys for Receiver, KENNETH D. BELL, ESQ.*

15

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing **FINAL LIQUIDATION PLAN** with the Clerk of Court using the CM/ECF system which will send notification to the following parties in this case:

John J. Bowers
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20815
bowersj@sec.gov
*Attorneys for Plaintiff Securities and Exchange Commission*

C. Melissa Owen
Jacob H. Sussman
Noell P. Tin
Sarah Elizabeth Bennett
Tin, Fulton, Walker & Owen
301 East Park Avenue
Charlotte, North Carolina 28203
cmowen@tinfulton.com
jsussman@tinfulton.com
ntin@tinfulton.com
sbennett@tinfulton.com
*Attorneys for Defendants Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul R. Burks*

Michael J. Quilling
Quilling, Selander, Lownds,
  Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
mquilling@qslwm.com

Rodney E. Alexander
Alexander Ricks PLLC
2901 Coltsgate Road, Suite 202
Charlotte, North Carolina 28211
rodney@AlexanderRicks.com

Aldo M. Leiva
Leiva Law, P.A.
2525 Ponce de Leon Boulevard
Suite 300
Coral Gables, Florida 33134
aleiva@leivalaw.com

Ira Lee Sorkin
Amit Sondhi
Lowenstein Sandler LLP
1251 Avenue of the Americas
18th Floor
New York, New York 10020
isorkin@lowenstein.com
asondhi@lowenstein.com

William R. Terpening
Matthew S. DeAntonio
Nexsen Pruet, PLLC
227 West Trade Street, Suite 1550
Charlotte, North Carolina 28202
wterpening@nexsenpruet.com
mdeantonio@nexsenpruet.com

This the 31st day of January, 2013.

/s/ Kenneth D. Bell
Kenneth D. Bell, Esq., Receiver

16

Case 3:12-cv-00519-GCM   Document 121   Filed 01/31/13   Page 16 of 16