IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

REX VENTURE GROUP, LLC d/b/a
ZEEKREWARDS.COM, and PAUL BURKS,

    Defendants.

Case No. 3:12-cv-519

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE ORDER STAYING
DISSOLUTION OF FEBRUARY 12, 2016 FREEZE ORDER**

Non-Party Banca Comerciala Victoriabank SA ("Victoriabank" or the "Bank") hereby submits its Memorandum in Support of Motion to Vacate Order Staying Dissolution of February 12, 2016 Freeze Order.

**INTRODUCTION**

This proceeding began on February 11, 2016, when the Receiver filed an *ex parte* motion under seal (the "Receiver's Motion" [ECF No. 469]) requesting, among other court actions: (1) an order finding Victoriabank, a foreign commercial bank organized under the laws of Moldova, jointly and severally liable for an amount in excess of $13 million; (2) an order finding Victoriabank in contempt of the Court's August 17, 2012 Order Freezing and Preserving Receivership Assets (the "2012 Freeze Order" [ECF No. 4, as amended by ECF No. 21]); and (3) pending the resolution of the two prior requests, an immediate freeze of more than $13 million held in Victoriabank's correspondent bank account at Bank of New York Mellon in New York

31462069v2

(the "BNYM Account"). On February 12, 2016, the Court entered an Order freezing $13,174,015.48 in funds held in the BNYM Account (the "2016 Freeze Order" [ECF No. 470]).

All of this activity took place with no notice to Victoriabank, and no opportunity to be heard in connection with or even object to the Court's entry of the 2016 Freeze Order. Rather, once the proceedings were unsealed, Victoriabank was presented with a *fait accompli* – hauled into a proceeding in a jurisdiction in which it had no presence and did no business, and with over $13 million of customer funds in its correspondent banking account frozen.

Almost fifteen months later, on May 3, 2017, after extensive briefing, two court hearings and substantial jurisdictional discovery, the Court ruled (correctly) that it had no jurisdiction over Victoriabank. The Court denied the Receiver's Motion and vacated the 2016 Freeze Order ("May 3, 2017 Ruling"). (*See* May 3, 2017 Hearing Tr. at 45:10-24.)

The Receiver filed a Notice of Appeal on May 23, 2017. [ECF No. 604.] On May 25, 2017, the Court, upon its own motion, entered an order (the "Stay Order" [ECF No. 606]) staying its dissolution of the 2016 Freeze Order pending the conclusion of the Receiver's Appeal.

Under the applicable rule, Fed. R. Civ. P. 62(c),[1] the Stay Order could only have been entered if the Receiver had made the following showings: (1) That the Receiver is likely to succeed on the merits; (2) That the Receiver will be irreparably injured absent a stay; (3) That Victoriabank would not suffer substantial injury upon issuance of a stay; and (4) That the public interest weighs in favor of a stay. The Receiver has made no such showings. Moreover, as detailed in this Memorandum, the Receiver cannot make any of these showings, and, accordingly, the Stay Order should be vacated.

---

[1] "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c).

## ARGUMENT

A freeze order is an injunction. *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151 (1st Cir. 2004). A final or interlocutory order in an action for injunction is not automatically stayed upon appeal; rather, such a ruling takes effect immediately. Fed. R. Civ. P. 62(a)(1). The Court did decide to hold the May 3, 2017 Ruling in abeyance for thirty (30) days, in order to give the Receiver the opportunity to decide whether or not to appeal, but in order to maintain the 2016 Freeze Order while the appeal was pending the Receiver was required to move under Rule 62(c), pursuant to which the district court may "suspend, modify, restore, or grant an injunction" pending appeal. However, "a party requesting a stay under Rule 62(c) is *not* entitled to a stay as a matter of right; rather, Rule 62(c) allows a district court, *within its discretion*, to stay the execution of a judgment pending appeal." *Curley v. Adams Creek Assocs.*, 2010 U.S. Dist. LEXIS 110153, at *5 (E.D.N.C. Oct. 15, 2010) (emphasis in original). In exercising its discretion to grant an injunction pending an appeal, a district court must evaluate four factors (the "*Hilton* Factors").

> [T]he factors governing issuance of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Underwood v. Harkleroad*, 2010 U.S. Dist. LEXIS 10842 (W.D.N.C. Jan. 19, 2010) (Mullen, J.) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)). The party seeking an injunction pending appeal bears the burden of persuasion. *Curley*, 2010 U.S. Dist. LEXIS 110153, at *6.

The *Hilton* Factors are substantially identical to the factors a district court must evaluate when ruling on a request for injunction in the first place. The party seeking the injunction has

- 3 -
31462069v2

Case 3:12-cv-00519-GCM   Document 608   Filed 05/30/17   Page 3 of 9

the burden to establish that *each* factor supports the granting of an injunction. *Campbell Sales Group, Inc. v. Gramercy Park Design, LLC,* No. 1:10CV55, 2010 WL 3945350, at *3 (M.D.N.C. Oct. 6, 2010); *see also Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). Likewise, in this setting, the Receiver bears the burden of showing that each factor supports the maintenance of the 2016 Freeze Order during the pendency of his appeal – failure on any one of them will require that Order to be dissolved, in accordance with the May 3, 2017 Ruling.

Here, the Receiver has not even applied for a stay pending appeal pursuant to Fed. R. Civ. P. 62(c), must less offered any justification for the Court to enter such an order. In fact, each of the *Hilton* Factors weighs strongly against the maintenance of the 2016 Freeze Order pending appeal.

> **A. The Receiver Cannot Make a Strong Showing that He Will Succeed on Appeal.**

This Court has already ruled that it does not have jurisdiction over Victoriabank, and that, therefore, the Receiver's Motion must be dismissed and the 2016 Freeze Order dissolved. This ruling was made less than a month ago. Nothing new has emerged since the May 3, 2017 Ruling that would suggest that the Receiver will prevail. To the contrary, that Ruling was made after extensive briefing and argument, with the Receiver having been granted the opportunity to take discovery, including an all-day deposition of Roman Balanko, extensive document discovery from Payment World USA and Bank of New York Mellon ("BNY Mellon"), and an affidavit in lieu of deposition from a representative of BNY Mellon. This jurisdictional discovery fell within the broader context of nearly four-and-a-half years of intensive investigation by the Receiver, which included substantial involvement by the United States Department of Homeland Security,

Secret Service, Department of Justice, Securities and Exchange Commission, and significant analysis by a team of forensic accounting experts.[2]

Despite this lengthy investigation and discovery, along with extensive legal briefing and argument, the Receiver was unable to convince this Court that it has personal jurisdiction over Victoriabank. It is impossible to conceive how the Receiver could make a ***strong showing*** of a likelihood of succeeding on appeal under these circumstances.

Because the Receiver has not shown any likelihood that he will succeed on the merits of his appeal, the Stay Order should be dissolved.

> **B.     The Receiver Cannot Show Irreparable Injury Absent a Stay Pending Appeal.**

The Receiver cannot show irreparable injury. He seeks money – and money is indisputably available. After all, the 2016 Freeze Order applied to the BNYM Account, and the discovery of BNY Mellon conducted by the Receiver showed that the account contains ample funds in the event the Receiver ever has any need of them. There is simply no indication that funds would be unavailable to satisfy a judgment against Victoriabank at some point in the

---

[2] *See, e.g.,* February 1, 2016 Receiver's Status Report for the Quarter of 2015 [ECF No. 451], at 1-2 ("During the third quarter, the Receiver Team continued to work with FTI [forensic accounting consultants] and various government agencies to collect and analyze documents and information to support its recovery of Receivership Assets."); Affidavit of Corenliu Popovici ("Popovici Aff.") filed April 19, 2016 [ECF 495-1], Exs. C and D (attaching correspondence sent by United States Department of Homeland Security to Victoriabank on Receiver's behalf); Affidavit of Michael Busen ("Busen Aff.") filed May 27, 2016 [ECF No. 521-1] (supporting Receiver's Response in Opposition to Victoriabank's Motion to Dismiss and providing analysis of FTI managing director); Hearing Tr. 29:9-16 ("We enlisted the services of the Department of Homeland Security, that is, the Secret Service. . . . We deferred a good long time to the federal authorities hoping that whether it's the Securities and Exchange Commission, the Department of Homeland Security, the Department of Justice, the Department of State, that somebody with probably more pull that we could get some cooperation out of Moldova Bank and Victoriabank."); Consent Motion for Extension of Briefing Schedule ("Consent Mot. for Ext.") [ECF No. 578], ¶ 4 (contemplating FTI's analysis of documents produced by BNY Mellon).

future, in the unlikely event (1) that the Fourth Circuit reverses, (2) the Receiver proves that Victoriabank is in fact subject to this Court's jurisdiction, and (3) that the Receiver proves Victoriabank was subject to and violated the 2012 Freeze Order.

Because the Receiver has not shown irreparable injury, the Stay Order must be dissolved.

### C. The Issuance of a Stay Pending Appeal Substantially Injures Victoriabank and its Customers.

Victoriabank has already been substantially harmed by the 2016 Freeze Order and will continue to be harmed by the Stay Order. Over $13 million in funds in the BNYM Account have been restrained for more than 15 months. As indicated in the Declaration of David S. Wildner ("Wildner Decl.") filed March 24, 2017 [ECF No. 593-2], the funds in that Account at any given time belong to customers of Victoriabank (or US-based customers of those customers) who engage in US Dollar-denominated international financial transactions. (*See, e.g.*, Wildner Decl. at ¶ 6; *see also* BNYM_VB_000010 and BNYM_VB_000014, contained in Ex. H to the Wildner Decl.)

The restraint of Victoriabank's funds pursuant to the 2016 Freeze Order was imposed in the complete absence of any judgment holding Victoriabank liable for the amounts restrained[3] or any finding that a United States court is even entitled to exercise jurisdiction over Victoriabank. Now, the Stay Order serves to extend the prejudgment restraint of a substantial sum of

---

[3] "[W]here a plaintiff creditor has no lien or equitable interest in the assets of a defendant debtor, the creditor may not interfere with the debtor's use of his property before obtaining judgment." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999) (citing *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999)). It is undisputed that no Receivership Assets have been on deposit at Victoriabank or its BNY Mellon correspondent bank account since November 2, 2015 – at least 3 months prior to the entry of the 2016 Freeze Order. Supp. Popovici Aff., ¶9. Therefore, the Receiver cannot possibly have a lien or equitable interest with respect to any funds on deposit at Victoriabank or its BNY Mellon correspondent bank account and the 2016 Freeze Order and Stay Order constitute unlawful prejudgment restraints of Victoriabank's funds.

- 6 -

Victoriabank's funds following an express finding by this Court that it lacks jurisdiction over Victoriabank.

The harm inflicted on Victoriabank by the 2016 Freeze Order and Stay Order is particularly stark in that the Court has never required the Receiver to post a bond as security for the $13 million frozen in Victoriabank's BNY Mellon correspondent bank account. Accordingly, should the Court decline to vacate the Stay Order, it should at least require the Receiver to post a bond in the amount of the funds unlawfully restrained. *See* Fed. R. Civ. P. 62(c).

Because the Stay Order simply serves to exacerbate substantial harm already caused to Victoriabank, it must be dissolved.

### D. The Public Interest Weighs Against a Stay Pending Appeal.

International commerce depends upon and is greatly facilitated by correspondent banking relationships. (*See* Wildner Decl., ¶ 6.) The prospect of a court-appointed receiver interfering with such international commercial transactions world-wide by freezing funds in a foreign bank's correspondent account without even establishing jurisdiction over that bank, or the bank's liability harms international commerce, and the customers of foreign banks who rely upon correspondent banking relationships to transact international business. Furthermore, a court-appointed receiver's ability to obtain a pre-judgment restraint of funds without establishing liability or personal jurisdiction threatens due process itself.

Because the Stay Order harms the public interest in reliable and stable international banking and the preservation of due process, it must be dissolved.

## CONCLUSION

For the reasons stated above, Victoriabank respectfully requests that this Court grant Victoriabank's Motion to Dissolve Order Staying Dissolution of February 12, 2016 Freeze Order. Alternatively, Victoriabank requests that this Court require the Receiver to post a bond pursuant to Fed. R. Civ. P. 62(c) in the amount of $13,174,015.48. Victoriabank also requests that the Court recommend to the Fourth Circuit that the Receiver's appeal be expedited.

Respectfully submitted, this 30th day of May, 2017.

By: *s/ Kiran H. Mehta*
Kiran H. Mehta
NC Bar No. 11011
TROUTMAN SANDERS LLP
One Wells Fargo Center
301 S. College Street, Suite 3400
Charlotte, NC 28202
Telephone: 704.998.4072
Facsimile: 704.998.4051
Email: kiran.mehta@troutmansanders.com

Lindsey B. Mann (*Admitted Pro Hac Vice*)
Kathleen M. Campbell (*Admitted Pro Hac Vice*)
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
Phone: (404) 885-3000
Facsimile: (404) 885-3900
Email: lindsey.mann@troutmansanders.com
kathleen.campbell@troutmansanders.com

Attorneys for Movant Banca Comerciala Victoriabank, S.A.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISSOLVE ORDER STAYING DISSOLUTION OF FEBRUARY 12, 2016 FREEZE ORDER** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 30th day of May, 2017.

       *s/ Kiran H. Mehta*
       Kiran H. Mehta
       North Carolina Bar No. 11011