## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) ) | **No. 3:12-CV-519** |
| **REX VENTURE GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL BURKS,** | ) ) ) ) | |
| **Defendants,** | ) ) ) ) | |

## RECEIVER'S RESPONSE TO VICTORIABANK'S MOTION TO VACATE ORDER STAYING DISSOLUTION OF FEBRUARY 12, 2016 FREEZE ORDER

On May 3, 2017 – as part of its oral ruling on Victoriabank's Motion to Dismiss – the Court made clear that because of the facts and "murkiness" of this matter it intended to stay its ruling dissolving the Freeze Order of February 12, 2012 in the event that the Receiver decided to appeal from the Court's decision. On May 23, 2017, the Receiver filed his Notice of Appeal[1] and then on May 25, 2017 the Court upon its own motion did what it said it was going to do and stayed the dissolution of the Freeze Order pending the conclusion of the appeal. (Doc. No. 606).

---

[1] The Receiver amended the Notice of Appeal on June 19, 2017 to include the Court's June 14, 2017 written Order granting Victoriabank's Motion to Dismiss.

Now, in a "motion to vacate," Victoriabank, having already received the benefit of the doubt in this "murkiness," challenges the Court's independent and *sua sponte* exercise of its discretion to stay its own Order. Not only is the Court's exercise of its discretion to stay the effect of its ruling pending appeal specifically authorized by Rule 62(c) of the Federal Rules of Civil Procedure, but the motion appears to be unprecedented. The Receiver has found no case in which a District Court or Court of Appeals has vacated or overturned a Court's decision *on its own motion* to stay a portion of one of its orders, particularly one in which the Court candidly acknowledged the lack of clarity of the matter in its original ruling.

In any event, there is ample and good cause for the Court's exercise of its discretion to stay the ruling, including a clear basis for a successful appeal, irreparable harm to the Receiver in the absence of the stay, no showing of any harm to Victoriabank from the stay and a substantial public interest in having the stay in place. Also, Victoriabank's alternate suggestion that the Receiver be required to post a bond in the full amount of the Freeze Order – money which Victoriabank of course still has – is unnecessary in the context of this Federal equity Receivership in which the Court already controls all the assets of the Receivership. Also, the bank has not made any showing that it is likely to incur monetary injury if the stay continues pending the appeal nor has it previously sought a bond. Finally, the appeal is now proceeding and the Receiver intends to request in its docketing statement that the Court of Appeals hear the appeal on an expedited basis as suggested by the Court.

For all these reasons and the others discussed below, the Court should reject Victoriabank's motion and continue to stay its ruling pending the appeal to maintain the status quo until this matter is finally decided.

## ARGUMENT

### I. The District Court Has Wide Discretion to Grant a Stay of Its Own Order

Federal Rule of Civil Procedure 62(c) allows a trial court to stay an injunction during the pendency of an appeal. Fed. R. Civ. Proc. 62(c). Specifically, the rule authorizes the Court to "***suspend***, modify, restore or grant an injunction" pending the appeal of an interlocutory order or final judgment that "grants, ***dissolves*** or denies an injunction." *Id*. (emphasis added); *see Richardson v. North Carolina*, No. 5:07-HC-2099-FL, 2008 WL 2397309, at *1 (E.D.N.C. June 12, 2008) ("[Federal Rule of Civil Procedure] 62(c) grants the court discretionary power to stay the execution of a judgment pending appeal."). As such, a district court is allowed, and encouraged, to adjust its own injunction pending appeal. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2908 (3d ed.).

Simply put, Rule 62(c) embodies the principle that district courts have an inherent power to maintain the status quo pending appeal. *Id.* at 11 Fed. Prac. & Proc. Civ. § 2904; *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1003 (5th Cir. 1969) ("It is well settled that 62(c) is expressive of the power in the courts to preserve the status quo pending appeal."). And, that is what the Court has done in this case – for both sides. Faced with a case that it found to be unclear, the Court granted the bank's motion to dismiss thus stopping the Receiver's claims, discovery and other litigation efforts against

3

the bank, but stayed the dissolution of the Freeze Order until the Court of Appeals has an opportunity to review the case and weigh in on the disputed issues, including the evidentiary and persuasive burden standards the Court should use to decide jurisdictional issues at this early stage of the proceedings.

The Court's exercise of its discretion to stay the dissolution of the Freeze Order is thus well within the wide bounds of Rule 62(c) and fairly maintains the status quo pending appeal. Indeed, as discussed above, the Receiver has not found any case, from any trial or appellate jurisdiction, in which a court has vacated an order entered by a trial court *on its own motion* staying the dissolution of an injunction pending appeal. Given the broad discretion afforded to trial courts to manage their own previously entered injunctions pending appeal, it is not surprising that granting Victoriabank's motion would be unprecedented.

In sum, the Court has properly exercised its discretion to stay its own Order and maintain the status quo pending appeal, and there is no basis for the Court to change that ruling.

## II.     The Court's Stay Order is Consistent with Applicable Standards For Staying Injunctions

Ignoring the fundamental and decisive fact that the *Court*, as part of its original ruling and then on its own motion, decided to exercise its discretion to partially stay the effect of its own Order, Victoriabank argues that the *Receiver* is somehow required to make certain showings as if the Receiver had moved the Court for relief. The Receiver is, however, plainly not required to make any showing to support an action taken by the

4

Court on its own motion. The Court has its own inherent power and authority to stay the effect of its own Orders, which it has properly exercised as discussed above.

Nevertheless, the Receiver could, if necessary, establish the showing erroneously demanded by the bank. Victoriabank argues that had the Receiver filed a motion to stay the effect of the Court's ruling, the motion would be governed by four factors commonly known as the *Hilton* factors (from *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987). These factors include: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.*

These factors are considered together and no one factor is determinative. *See Hilton*, 481 U.S. at 777, 107 S. Ct. at 2119. ("Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."); *see also Richardson,* 2008 WL 2397309, at *1 (considering *Hilton* factors and entering a stay of a summary judgment order despite finding no likelihood of success on appeal based on the strength of the remaining factors).

### A. Likelihood of Success

The first factor is likelihood of success. The Receiver believes that he has a strong likelihood of success on appeal. Without belaboring all the arguments on the merits previously presented to the Court in opposition to the motion to dismiss, the Receiver's view is that Victoriabank has, at a minimum, led the Court to adopt an erroneous view of

5

the applicable burden of proof, requiring the Receiver to establish personal jurisdiction by a preponderance of the evidence (without considering "hearsay" testimony) at this early stage of the proceedings even though Victoriabank has refused to provide jurisdictional discovery. *See Grayson v. Anderson*, 816 F.3d 262 (4th Cir. 2016) (the District Court should require only that the plaintiff make a prima facie showing of jurisdiction as a preliminary matter rather than requiring proof by a preponderance of the evidence where there has not been full jurisdictional discovery, particularly where any factual issue important to jurisdiction is also tied up with the merits). In this case not only has Victoriabank refused to provide discovery on key issues such as the common ownership between the Bank and Payment World Moldova, but those issues are relevant both for jurisdiction and the merits of whether Victoriabank should he held liable for violation of the Freeze Order. Accordingly, the Receiver has a strong likelihood of success on appeal.

### B.  Irreparable Injury to the Receiver

The second factor is whether the applicant would be irreparably harmed absent a stay.  If the Freeze Order is immediately dissolved, then the Receiver (or more accurately the victims who the Receiver is attempting to reimburse for their losses in the ZeekRewards Ponzi scheme) will be irreparably harmed.  In the absence of a stay, Victoriabank would be free to close, limit or move the account subject to the Freeze Order which in turn would create significant delays in if not make practically impossible the recovery of the more than $13 million now being frozen, even if the Receiver prevailed on appeal.  The harm to the Receivership and its victims from having to

6

substantially delay the closing of the Receivership and final distribution of funds (perhaps for years) while the Receiver chases Victoriabank to recover the money due cannot be known or effectively remedied. Therefore, the Receiver and victims will be irreparably harmed in the absence of a stay.

## C. Absence of Substantial Injury to Victoriabank

The third factor is whether issuance of the stay will substantially injure the other parties interested in the proceeding. In contrast to the harm to the Receiver, Victoriabank would not suffer any harm if a stay of the dissolution of the Freeze Order remains in place pending an expedited appeal. First, Victoriabank has never alleged that it has suffered or will suffer any injury, much less substantial injury, from maintaining the Freeze Order. And, no harm is likely to occur. Victoriabank has not been required to pay any money to the Receiver nor has its use of the money been restricted in any meaningful way beyond the requirement that approximately $13 million be maintained in an account that regularly handles hundreds of millions of dollars. Accordingly, Victoriabank has never claimed nor can it credibly claim that it will actually be harmed by a stay pending an expedited appeal.

## D. Public Interest

The final factor is where the public interest lies in whether a stay should be issued. This factor strongly favors the Receiver. The public has a clear and substantial interest in bringing to justice and obtaining financial recoveries from those who assisted and furthered the ZeekRewards Ponzi scheme, whether intentionally or otherwise. Further, the public has an interest in making sure that the orders of courts in aid of Receiver's

7

seeking to recapture funds to compensate the victims of fraudulent schemes are followed by financial institutions who may be tempted to assist customers (particularly those who also have significant ownership interests in the bank) in avoiding orders freezing ill-gotten assets. On the other hand, as noted above, the public should have little interest in protecting a bank that uses a correspondent bank account in the United States to transfer funds subject to a Freeze Order and who, in any event, will not suffer any harm by the stay of the dissolution of the Freeze Order on jurisdictional grounds pending an expedited appeal.

In summary, considered together, the *Hilton* factors would fully support the Court's issuance of a stay of the dissolution of the Freeze Order had the Receiver moved for a stay of the Court's ruling (which, of course, did not happen because the Court took this action in the exercise of its own discretion).

### III.    Requiring the Receiver to Post a Bond Pending Appeal is Unnecessary in the Context of this Federal Equity Receivership

The final alternative argument raised by Victoriabank is a request that the Receiver be required to post a bond in the amount of $13,174,015, the full amount being frozen under the Freeze Order (but which Victoriabank still has in its possession).  This request, being made now for the first time over 16 months after entry of the Freeze Order, is unnecessary and should be rejected in the context of this Federal equity Receivership. The Receiver is a quasi-Judicial officer appointed and directed by the Court, and all of the Receiver's assets are already under the Court's control and supervision. Indeed, the Receiver files regular accountings of the Receivership's assets with the Court.  It would be

8

wasteful and unnecessary to require the Receiver (who serves without a bond pursuant to the Agreed Order entered August 17, 2012, Doc. No. 4) to obtain and post a bond under these circumstances. To the extent that any claim could properly be made against the Receivership in the future, the Court has full control of the Receivership's assets so that any claimant's alleged interests in those assets is well protected. Therefore, the request that the Receiver be required to post a bond should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Victoriabank's motion to vacate the Court's Order on its own motion to stay dissolution of the Freeze Order pending appeal.

Respectfully submitted, this 21st day of June, 2017.

By: ___/s/ Irving M. Brenner_____
Kenneth D. Bell, N.C. State Bar No. 10800
Irving M. Brenner, N.C. State Bar No. 15483
MCGUIREWOODS LLP
201 North Tryon Street, Suite 3000 (28202)
Post Office Box 31247
Charlotte, North Carolina 28231
Telephone: 704-343-2075
Facsimile:  704-343-2300
kbell@mcguirewoods.com
ibrenner@mcguirewoods.com

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing using the

CM/ECF system which will send notification to counsel of record registered to receive

electronic service.


This the 21st day of June, 2017.

/s/ Irving M. Brenner
Irving M. Brenner (N.C. Bar No. 15483
McGUIREWOODS LLP
201 North Tryon Street, Suite 3000 (28202)
Post Office Box 31247
Charlotte, North Carolina 28231
Telephone: (704) 343-2075
Facsimile:  (704) 343-2300
ibrenner@mcguirewoods.com