IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-CV-519

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| REX VENTURE GROUP, LLC d/b/a Zeekrewards.com, | ) ) ) |
| Defendants. | ) |

**ORDER**

THIS MATTER IS BEFORE THE COURT on the Securities and Exchange Commission's ("SEC") Objection to the Receiver's Application for Fees and Expenses for the Third Quarter of 2017. Although the SEC has requested a hearing, the Court finds that the filings are adequate for the Court to make a decision.

The Receiver has had a fraught relationship with the SEC since the beginning. The SEC official in charge of the unit dealing with such receiverships early on intensely pressured the Receiver to employ a New York-based law firm to handle necessary legal representation. Mr. Bell, the Receiver, demurred and sought bids from law firms in order to select the attorneys who would provide the most economical such services. As a result of the bidding, the Receiver determined that the firm McGuireWoods, LLP ("McGuireWoods") would represent the receivership.

The Receiver did request bids from the firms the SEC recommended, as well as others. No firm other than McGuireWoods submitted a bid based upon a straight hourly rate fee structure. Every other firm used a contingent fee structure which the Receiver concluded would result in much greater expense. The relationship somewhat simmered thereafter and now comes

to a boil.

From the Court's perspective, the most serious objection — that annual rate increases were undisclosed — carries more than a whiff of allegations of significant impropriety. The SEC argues that any fee increases should have been specifically requested, noticed to all stakeholders, and expressly approved. No such requirement has been identified in any of the Billing Instructions. Indeed, as pointed out by the Receiver, those instructions contemplate billing at hourly rates in effect at the time services were rendered.

Annual hourly rate increases occurred every year after 2014 and all such rates were disclosed in every fee application filed with the Court. Each such application was provided to the SEC at least thirty days prior to filing. Presumably, the SEC reviewed all such draft applications and having reviewed them made no objection to the fee increases. In short, this particular objection rings hollow and is rejected by the Court.

The SEC also objects that McGuireWoods' time keeping entries are "vague and repetitive" and fail to set forth in sufficient detail what legal services were rendered. The SEC cites specifically time entries from "IMB," an attorney partner, as an example noting the "virtually identical" entry "'communication with net winners re settlement and manage the settlement/discharge process.'" In essence, the SEC objects that the time entries fail to set forth *reasonable* detail.

This SEC objection fails to consider the context in which these time entries were made. The McGuireWoods partner who made those time entries was engaged in negotiations and settlement management with two specific groups of net winners. Those groups included: (1) those who owed in excess of $100,000 and expressed an interest in settlement; and (2) all net winners represented by counsel as well as net winners who requested specific equitable

humanitarian consideration. It is unremarkable therefore that the time entries reflect that "IMB" performed the same tasks for the net winners assigned to him. The Receiver has provided a very detailed explanation cataloging the circumstances and context in his response, Document 695, pages 9 – 13, case 3:12-cv-00519-GCM (hereinafter Doc. No. 695). The Court is satisfied that this explanation adequately justifies the questioned time entries and rejects the SEC objection thereto.

The SEC further objects to paralegal time entries. Again, Doc. No. 695 adequately responds to and vitiates the objection.

The SEC objections have centered on time entries arising out of the net winner defendant class action and the Victoriabank litigation matters. In addition to matters already dealt with above, the SEC characterizes time entries as "lumping" and "block billing." Again, the Receiver's response, Doc. No. 695, pgs. 17 – 19, adequately responds and is adopted by the Court.

The SEC further complains that the class action was inefficiently staffed. However, the staffing utilized for the life of the class action produced millions in settlements for the Ponzi scheme victims. In producing the millions in settlements, the percentage of attorney's fees charged was around ten percent. This is an astonishing achievement and reflects results this Court has not seen in like proceedings. These results can hardly be criticized as inefficient.

The resolution of the Receiver's request for fees and expenses and the SEC objections thereto is a discretionary matter for the Court. *See SEC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2009 WL 3122608, at *3 (S.D.N.Y. Sept. 29, 2009). In exercising this discretion, the Court properly considers "all of the factors involved in a particular receivership," *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994), including but not limited to, "the complexity of

problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973). Much of the matters informing that discretion have been dealt with above. There are, however, some broader themes that also inform the Court's discretion.

The ZeekRewards scheme was literally unprecedented in its scope. While Mr. Madoff vacuumed up more money, he did so from far fewer victims. ZeekRewards affected tens of thousands of people from the far corners of the earth. Dealing with that volume alone called for singular legal and administrative effort by the Receiver and his counsel. For example, in the early days of the proceeding, the Receiver found 80 million dollars in cashier's checks located at ZeekRewards offices. Converting those checks into monetary assets of the receivership and establishing individual accounts of the payors was a monumental undertaking in and of itself.

The SEC essentially argues that the Receiver was handed the vast bulk of funds seized by the government, and therefore, the extensive efforts of the Receiver and his counsel were overdone and unnecessary. Frankly, this fails to grasp the complexity of the matter and the resulting need for the actions of the Receiver.

The timing of the SEC objection is puzzling. The receivership is clearly in the winding-down stage. Virtually all the net winners who were worth pursuing have been pursued so further proceedings in the class action will soon cease. The only significant litigation, the Victoriabank/Payza/Payment World matter, may be approaching an inflection point, but in any event, the Receiver cannot simply ignore the 13 million dollars at issue therein. Thus, that litigation is expected to continue.

This Court has held numerous conferences with the Receiver and is satisfied that he is utterly committed to recovering the maximum amount for the victims with the most cost-

effective means. In addition, the Court has carefully considered the Receiver's request and attachments thereto and the SEC objections, all of which informs the Court's discretion.

IT IS THEREFORE ORDERED THAT the SEC objections are overruled, and the Receiver's application is approved. A separate Order will be entered approving the amounts requested in the application.

Signed: November 29, 2018

Graham C. Mullen
United States District Judge